# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| CAITLIN WYNN, on behalf of herself and all others similarly situated, | Case No.   4:20-cv-595 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| ASHLEY BLACK, ADB INNOVATIONS, LLC, ASHLEY BLACK GURU, ASHLEY DIANA BLACK INTERNATIONAL HOLDINGS, LLC, ASHLEY BLACK FASCIOLOGY LLC, ADB INTERESTS, LLC, ASHLEY BLACK LIFESTYLE, LLC, and DOES 1-100, | |
| Defendants. | |

Plaintiff Caitlin Wynn ("Plaintiff"), individually and on behalf of all others similarly situated, by her attorney, alleges the following upon information and belief, except for those allegations pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This consumer class action seeks to remedy the false and deceptive business practices of ADB Innovations, LLC, ADB Interests, LLC and other related entities ("Defendants") with respect to the marketing and sales of "FasciaBlaster" products throughout the United States.

2.     The base model FasciaBlaster is essentially a two-foot stick with hard prongs attached to it, which sells for $89.00:



3. Purchasers are instructed by Defendants to grind the FasciaBlaster's prongs into their bodies to the point of bruising to achieve numerous miraculous health benefits including the "elimination of cellulite," "better nerve function" and "chronic pain relief."

4. During the relevant time period the following statement featured prominently on the website at checkout:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

5. These claims are and were repeated, in different forms, throughout the website.

6. All these claims are baseless and false.

7. Defendants also sell different versions of the FasciaBlaster (e.g. "Mini

2" and "FaceBlaster") and topical skin creams and oils for use in connection with the FasciaBlasters, including a numbing cream to help alleviate the inevitable pain and bruising caused by its use.

8.      Defendants' conduct violates, among others, Illinois state consumer protection statutes and warranty law.  Plaintiff brings claims under the laws of Illinois as well as seeking to represent a class of Illinois consumers.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving thousands of class members; (2) Plaintiff and the Class (defined below) are citizens of the State of Illinois; Defendants are citizen of the States of Texas and California; and on information and belief more than two-thirds of class members reside outside of Texas; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

10.      This Court has personal jurisdiction over Defendants because each Defendant apart from Ashley Black has their principal place of business, and conducts substantial business, in this District.   Defendant Ashley Black, a resident of California, also conducts and transacts business in the State of Texas, contracts to supply goods within the State of Texas, and supplies goods within the State of Texas as the central figure in the widespread deception complained of herein.

11.      Venue is proper because numerous Defendants reside in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

**Plaintiff**

12.      **Caitlin Wynn** is an individual consumer who, at all times material hereto, was a resident of Illinois.

13. On February 20, 2017, she purchased three FasciaBlaster products from Defendants through Defendants' website. The three products were the "standard" FasciaBlaster, the "mini" FasciaBlaster, and the "facial" FasciaBlaster.

14. Ms. Wynn read the statements on the website, including the paragraph:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body. With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

15. Ms. Wynn relied on these representations in making her purchase decisions.

16. Ms. Wynn used all three FasciaBlasters as directed, but received none of the claimed benefits.

17. Ms. Wynn suffered pain and bruising as a result of using the FasciaBlaster.

18. Had Ms. Wynn known the truth about the FasciaBlasters, *i.e.* that they do not work and are incapable of conferring the promised benefits, she would not have purchased them.

19. Ms. Wynn does not know if the representations made on the Ashley Black website will be true or not in the future. If she could be sure of the truth of those representations, she would purchase Fasciablasters again.

20. Ms. Wynn suffered injury in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

21. **Ashley Black** is an individual who is the founder and principal owner of the corporate entity Defendants and is the person primarily responsible for the

wrongdoing alleged herein. Upon information and belief, Ms. Black resides in California. Ms. Black features prominently on the Ashley Black website and is the main spokesperson touting the benefits of the FasciaBlaster on the website, social media, and other outlets. Ashley Black may be served at 405 W. Spreading Oaks Ave., Friendswood, Texas 77546. *Service is hereby requested.*

**Defendant Corporate Entities Controlled By Ashley Black**

22. The following corporate entities are owned and controlled by defendant Ashley Black. The precise role of each of the corporate entity Defendants in the wrongdoing alleged herein is unknown. All of these entities, however, are controlled by Ashley Black and as a practical matter have little, if any, independent corporate existence. The corporate structure, ownership, holdings and operations of these entities will be the subject of discovery.

23. **Defendant ADB Innovations, LLC** is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Pearland, Texas in this District. ADB Innovations, LLC identifies itself in corporate literature as the source of some of the Ashley Black products and is the source of one of the disclaimers about the products. ADB Innovations, LLC may be served through its registered agent, Capitol Corporate Services, Inc., at 206 E. 9th St., Ste. 1300, Austin, Texas 78701. *Service is hereby requested.*

24. **Defendant ADB Interests, LLC** is a Texas company based, on information and belief, in Pearland, Texas in this District. ADB Interests LLC is identified as the owner of the Ashley Black website that carries the misrepresentations, and, upon information and belief, is the parent holding company of Defendant ADB Innovations, LLC. ADB Interests, LLC may be served through its registered agent, Capitol Corporate Services, Inc., at 206 E. 9th St., Ste. 1300, Austin, Texas 78701. *Service is hereby requested.*

25. **Defendant Ashley Black Guru** is located at 5205 Broadway St., Pearland, Texas in this District. This entity identifies itself as a copyright holder on certain corporate literature and on the Ashley Black website.

26. **Defendant Ashley Diana Black International Holdings, LLC** is a Delaware corporation, based, on information and belief, in Pearland, Texas in this District. Ashley Diana Black International Holdings, LLC is the holder of certain intellectual property concerning the FasciaBlaster. Ashley Diana Black International Holdings, LLC may be served through its registered agent, Capitol Corporate Services, Inc., at 1675 S. State St., Ste. B, Dover, Delaware 19901. *Service is hereby requested.*

27. **Defendant Ashley Black Fasciology, LLC** is another Delaware corporate entity controlled by Ashley Black. Its precise role in the marketing and sale of the FasciaBlaster is unknown. Ashley Black Fasciology, LLC may be served through its registered agent, Capitol Corporate Services, Inc., at 1675 S. State St., Ste. B, Dover, Delaware 19901. *Service is hereby requested.*

28. **Defendant Ashley Black Lifestyle, LLC** is another Delaware corporate entity controlled by Ashley Black. Its precise role in the marketing and sale of the FasciaBlaster is unknown. Ashley Black Lifestyle, LLC may be served through its registered agent, Capitol Corporate Services, Inc., at 1675 S. State St., Ste. B, Dover, Delaware 19901. *Service is hereby requested.*

29. **Defendants DOES 1-100** are sued through this fictitious designation until their identities come to light.

30. Unless indicated otherwise, and until the precise role in the conduct alleged herein is established, the defendants will be referred to collectively as "Defendants."

## FACTS

### The Device

2

3    31.    The base-model FaciaBlaster is a rod with handles on each end and
4    rounded claws protruding in the middle:



32.    The    FasciaBlaster    is    sold    through    Defendants'    website,
www.ashleyblackguru.com:



**The Misrepresentations**

33.     During the relevant time period Defendants' website stated on the checkout page:

> The FasciaBlaster® was designed, engineered, and manufactured by Ashley Black. It is the ONLY tool on the market that opens the fascia at the deeper layers and breaks up fascial adhesions. The FasciaBlaster® is designed for self-treatment and can be used by anyone on any area of the body.  With regular use of the FasciaBlaster®, one can expect pain reduction and improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty including the virtual elimination of CELLULITE.

*See*  https://ashleyblackguru.com/product/fasciablaster/5938157638/  (last   viewed April 17, 2018).

34.     The front page of the website stated that use of the FasciaBlaster "Lessens the look of cellulite" "Improves blood flow" "Helps reduce pain" and

"accelerates muscle recovery."

35.    Similar claims are and were made throughout the website.

36.    Defendants also tout a study of their own design to theorize that use of the FasciaBlaster "mimics" diet and exercise by pushing fat into the bloodstream where, it is asserted, it may be used as energy or excreted naturally:

> **The levels of fat in the blood were safe and consistent with diet and exercise.**  Take a look at this graph below.  This shows for the 35 women in the study, the mean level of free fatty acids in the blood increased after their initial FasciaBlasting session.  This is exciting because it supports the idea that the FasciaBlaster® "mimics" exercise or dieting by mobilizing fat into the bloodstream to be either used as energy or excreted naturally.  By the next day, the mean levels of fat in the bloodstream returned to low normal levels.  Of course, using the FasciaBlaster® is not a substitute for a healthy diet and exercise, but it is encouraging to see results that support the positive effect of FasciaBlasting® on fat cells.

*See* https://ashleyblackguru.com/findings/ (emphasis in original) (last viewed April 17, 2018).

37.    This claim is also false.  Use of the FasciaBlaster does not "mobilize fat into the bloodstream to be either used as energy or excreted naturally."

38.    The FasciaBlaster sells for $89.00:



FASCIABLASTER®

$89.00

− 1 +    ADD TO CART

The FasciaBlaster® was designed, engineered, and manufactured by
Ashley Black. It is the ONLY tool on the market that opens the fascia at
the deeper layers and breaks up fascial adhesions. The FasciaBlaster®
is designed for self-treatment and can be used by anyone on any area
of the body. With regular use of the FasciaBlaster®, one can expect pain
reduction and improved flexibility, joint function, circulation, muscle
definition and performance, nerve activity, posture, and enhanced
beauty including the virtual elimination of CELLULITE.

Click here for instructions

Click here for FasciaBlaster® tutorials!



*See* https://www.fasciablaster.com/collections/all/products/fasciablaster (last viewed April 17, 2018).

39.     Defendants' health claims are false and unsupportable.

40.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can eliminate, or even reduce, cellulite.

41.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can reduce chronic pain.

42.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve flexibility.

43.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve joint function.

44.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve circulation.

45.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve muscle definition.

46.     There is no competent and reliable scientific evidence supporting the

claim that the FasciaBlaster can improve muscle performance.

47.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve nerve activity.

48.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve beauty.

49.     There is no competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve posture.

**The Fasciablaster's Instructions For Use And Resulting Harm**

50.     However, use of the FasciaBlaster does have one undeniable effect: pain and potential serious bodily harm.  To use the FasciaBlaster, users are instructed to forcefully rub the claws into their bodies after "Getting Hot!!!" and slathering themselves with oil.

51.     Users are also advised not to concern themselves with the pain they are experiencing.  The website states:

> FasciaBlasting can be a little painful at first, so you'll want to start off light and brisk to open up those initial layers of fascia.  Once you've been FasciaBlasting frequently for a few weeks (at least 10 sessions in each area) you can start going a bit deeper and work your way up to a little more pressure.  On a pain scale from 1-10, you should stay at a 2-4.  Never go harder than a 7, and be sure to ease into treatment!
>
> . . .
>
> If you've never manipulated your fascia before, you may not know what to expect.  It's understandable that you might "freak out" about some of the ways your body reacts to the treatment.  We want you to know what is common and normal in the aftermath of a FasciaBlasting session.

52.     Essentially, users are instructed to grind the claws into themselves until they bruise.  The pictures below are from the Ashley Black website and apparently intended to show what normal use of the FasciaBlaster will cause:



*See* https://ashleyblackguru.com/bruise/ (last viewed April 17, 2018).

53.     Defendants state that bruising is nothing to be concerned about and that once users "understand the science behind the bruises associated with FasciaBlasting" any concerns will be assuaged:

> **Bruises** – Bruising after FasciaBlasting is a TOTALLY normal, healthy part of the restorative process and means it's working!  Be sure to read the News on the Bruise so you fully understand the science behind the bruises associated with FasciaBlasting and learn what to do for recovery.  Don't worry, the bruises will fade in a few days and in a few months, once your fascia is restored, bruising will be reduced to a minimum.
>
> …
>
> While bruising IS normal, you also don't want to overdo it!  If you see some extremely dark, ugly bruises the following day, you might want to go a little lighter next time and see how your body reacts.  Like I said, you'll eventually work up to blasting harder, but you should ease into treatment and open up one layer of fascia at a time.

54.     Then, after recovery, users are instructed to dig the claws deeper to reach new, previously unaffected layers of fascia, to cause yet more bruising.  Bruising, Defendants claim, is a sign of "restoring" unhealthy fascia:

> There is no exact time frame and everyone's fascia is in a different stage.  There are so many factors that contribute, but I can make a generalization here to give you an idea.  Bruising, as explained above, happens when you're breaking up fascial adhesions and restoring the fascia, and is part of the inflammation process, so it will always be possible as long as you're alive.
>
> There is generally a 2-3 month restoration phase where you'll initially bruise after using the FasciaBlaster.  Once the surface layers of fascia are fully restored, you won't bruise as much unless the fascia adheres or becomes distorted again.  However, over time as you reach new layers that hadn't been previously restored, you can continue to see bruising!  Does that make sense?

*See* https://ashleyblackguru.com/bruise/ (last viewed April 17, 2018).

55.     Bruises, also known as contusions, are caused when blood vessels are damaged or ruptured by force against the skin.  The appearance of the bruise results from blood leaking out of blood vessels into surrounding tissue.

56.     Bruising is not a sign of restoring supposedly infirm fascia to health.

57.     Defendants also advise users to "learn what to do for recovery" after they bruise themselves.

58.     Then Defendants offer to sell consumers "After Blaster" lotion, which Defendants promise will "help accelerate recovery and reduce the look of bruising and inflammation after FasciaBlasting."

59.     Indeed, the FasciaBlaster is so painful to use as directed that Defendants' aftercare lotion contains a "numbing agent:"

> the After Blaster lotion is AMAZING for recovery — it has a high-quality Arnica to promote faster healing as well as skin tightening and numbing agents to help reduce swelling/inflammation and pain after blasting!

60.     The After Blaster lotion and the pre-use spray are sold for $35.00:



### BLASTER OIL AND AFTER BLASTER

$35.00



The Blaster Oil was specifically designed to enhance the effects of the FasciaBlaster®. The oil streams out of a spray bottle so you can apply it to target areas without getting your hands oily, which is perfect for gripping the FasciaBlaster®. The density and consistency allow the FasciaBlaster® to glide smoothly over the skin to stimulate blood flow as well as loosen and release fascial adhesions. The Blaster Oil is compounded with 3 algaes that have shown to burn stored fat which helps with the visible reduction of cellulite. It also smells like an ocean day!

The After Blaster lotion contains high-quality Arnica to help accelerate recovery and reduce the look of bruising and inflammation after FasciaBlasting. It also has a skin tightening ingredient that is sure to give you an extra boost!

This fantastic combo is the perfect compliment to your FasciaBlasting routine and will take your results to a whole new level.

Click here to see a list of ingredients and read the research behind these products!

*See* https://ashleyblackguru.com/product/blaster-oil-and-after-blaster/9011237260/ (last viewed April 17, 2018).

## Fascia

61.    The term "fascia" refers mainly to the collagen wrappings around internal organs and muscles as well as the sheaths around nerves and blood vessels.

62.    Defendants state that use of the FasciaBlaster will "open the fascia at deeper layers" and "break up fascial adhesions."

63.    There is no competent or scientific evidence that "fascial adhesions" even exist, let alone that it would be beneficial to destroy them.

64.    In addition, the use of the FasciaBlaster is not precise.  Since fascia covers organs, muscles, and blood vessels, users are also grinding the spikes into (obviously) their skin, organs, nerves, muscles, blood vessels, and bones.

65.    Accordingly, in addition to the dangers of actually rupturing fascia, users risk significant "collateral" damage to skin, organs, nerves, lymph glands, muscles,

blood vessels, bones and other structures.

**Defendants' FDA Reporting**

66.     The FasciaBlaster touts itself as a medical device.  During the relevant time period Defendants' website stated:

> The FasciaBlaster is a Class I medical device.  Research and product claims have not been reviewed by the US Food and Drug Administration.

67.     Using the term "Class I medical device" in a statement preceding the standard FDA disclaimer would mislead a reasonable consumer into believing the FDA had a role in approving the device for use.

68.     The intent to convey the misleading impression of government approval is demonstrated by the fact that defendant Ashley Black, the company's founder, once stated on social media that the FaciaBlaster had been approved by the FDA.

**Other Misrepresentations**

69.     Defendants made and still make numerous other unsupportable medical claims.

70.     During the relevant time period Defendants' website also states or stated that the use of the FasciaBlaster will:

- Reduce and minimize inflammation
- Instantly reduce pain
- Increase joint health
- Improve blood pressure
- Improve mental function
- Improve nerve function

71.     The website also states or stated that the FasciaBlaster can treat pain from fibromyalgia, a serious chronic pain condition.

72.     There is no competent and reliable scientific evidence supporting the claim that the use of the FasciaBlaster can confer any of these benefits.

73. Defendants did/do create and operate shill (*i.e.* fake) Facebook profiles, and surreptitiously contract with undercover third party "motivators" in order to present the false public impression that these are disinterested parties as they broadcast glowing third-party feedback, and oppose, attack, and make every effort to undermine any negative third-party feedback.

74. Defendants have made and/or continue to make false representations regarding the medical/academic qualifications of individuals associated with FasciaBlaster "instructional" media and other marketing.

75. During the relevant time period Defendants' website and other marketing media claim or claimed that FasciaBlaster has been subjected to "clinical study" and "double-blind scientific research."

76. In fact, the only putatively scientific research was the putative clinical trial undertaken at ASPI from mid-December 2016 through mid-March 2017, which was dubiously scientific, was conducted without IRB oversight, violated HIPAA and FDA protocols, and was not "double-blind" because there was no "control group versus test group" structure, but rather just 35 participants all doing the same thing and submitting their results.

77. Defendants have claimed that FasciaBlaster is 100% safe. On May 18, 2017, Defendant Black stated in a promotional video that no woman had reported injuries to her. As recently as August 31, 2017, Black stated "[t]here are no serious injuries reports (*sic*) … [w]e investigate all claims."

78. In fact, thousands of FasciaBlaster users experienced adverse effects therefrom. Defendants received numerous complaints dating back more than a year before Ms. Black claimed otherwise. An FDA Inspection Report specifies that at least 70 users reported injuries directly to Defendants and were ignored. Many complaints were raised before May 18, 2017, and as explicitly noted in the FDA Report, prior to Ms. Black's assertion to the contrary on August 31, 2017.

Defendants were indeed notified of numerous customer injuries serious enough to require emergency hospitalization.

79.     During the relevant time period Defendants' website and social media sites featured multiple sets of alleged "before and after" photos purporting to demonstrate promising results of FasciaBlaster use.

80.     In fact, many of these photos were digitally altered; others were directly copied from various plastic surgery or liposuction websites; at least one pair of pictures was taken mere moments apart, but with different lighting giving them the appearance of improvement from one to the next; and at least one pair of photos feature a woman who was eight-months pregnant in the "before" photo, then four or five months postpartum in the "after," which Defendants fail to disclose in presenting them merely as a standard example of positive results.

81.     In tiny gray print on a black background, at the bottom of the checkout page below the website copyright notice it reads:

> Legal Disclaimer:  All claims and results within are based on years of anecdotal evidence.  The company is currently studying claims for scientific validation.

82.     However, there is no "scientific validation" possible, since the directed use of the FasciaBlaster does not provide the claimed benefits.

## CLASS ALLEGATIONS

83.     Plaintiff brings this matter on behalf of herself and similarly situated consumers.  Defendants orchestrated deceptive marketing and advertising practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this case is appropriate for classwide resolution.

84.     The Class is defined as all consumers who purchased the FasciaBlaster anywhere in the State of Illinois during the Class Period (the "Class").

85.     This action should be certified as a class action under Federal Rule of

Civil Procedure 23(a) and (b)(3). It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy.

86. Numerosity: The members of the Class are so numerous that joinder is impracticable. Plaintiff believes that there are thousands of consumers who have been damaged by Defendants' deceptive and misleading practices.

87. Commonality: The questions of law and fact common to the members of the Class predominate over any questions which may affect individuals and include, but are not limited to:

a. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can eliminate, or even reduce, cellulite;

b. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can reduce chronic pain;

c. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve flexibility;

d. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve joint function;

e. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve circulation;

f. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve muscle definition;

g. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve muscle performace;

h. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve nerve activity;

i. Whether there is competent and reliable scientific evidence supporting the claim that the FasciaBlaster can improve posture;

j.    Whether Defendants' false and misleading statements concerning the FasciaBlaster were likely to deceive a reasonable consumer;

k.    Whether the representations made by Defendants constitute actionable express warranties and whether Defendants have breached those warranties;

l.    Whether an implied warranty of merchantability exists and whether Defendants have breached it;

m.    Whether an implied warranty of fitness for a particular purpose exists and whether Defendants have breached it;

n.    Whether Defendants have been unjustly enriched;

o.    Whether injunctive relief should be granted; and

p.    The amount of damages attributable to Defendants' misrepresentations.

88.    <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the Class because they were subjected to the same deceptive, misleading conduct and purchased the FasciaBlaster in reliance on Defendants' misrepresentations.

89.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class she seeks to represent; her consumer fraud claims are common to all members of the Class; she has a strong interest in vindicating their rights; she has retained counsel competent and experienced in complex class action litigation; and she intends to vigorously prosecute this action.

90.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The common issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and advertising practices and their objective impact on a reasonable consumer.

91.    <u>Superiority</u>: A class action is superior to the other available methods for

the fair and efficient adjudication of this controversy because:

    a.    The joinder of thousands of individual consumers is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.    The individual claims of the Class Members are small compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c.    When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    e.    Plaintiff know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

    f.    A class action will assure uniformity of decisions among Class Members;

    g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

    h.    The interests of Class Members in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

    i.    It would be desirable to concentrate in a single venue the litigation of all members of the Class who were induced to purchase the FasciaBlaster by Defendants' uniform false advertising.

92.    Accordingly, this case is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

93.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.   Here, Defendants have made false and unsupported claims about the health benefits of the use of the FasciaBlaster.  Since Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a classwide basis is a viable and suitable solution to remedy Defendants' continuing misconduct. Plaintiff does not know if the representations made by Defendants will be true or not in the future. Plaintiff would use the FasciaBlaster again, and would purchase additional related products from Defendants, if Defendants' claims about the FasciaBlaster were true.

94.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy:

95.     Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable.  Upon information and belief, the FasciaBlaster has been purchased by thousands of people in Illinois.

96.     Commonality: Questions of law and fact are common to members of the Class.  Defendants' misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendants to stop their misleading conduct through an injunction.   Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

        a.     Resolution of the issues presented in the 23(b)(3) class;

        b.     Whether members of the Class will continue to risk suffer harm
               and risk of harm because of Defendants' deceptive product
               marketing; and

22

c. Whether, on equitable grounds, Defendants should be prevented from continuing to make false and unsupported health claims about the FasciaBlaster.

97. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because their claims arise from the same misrepresentations. Plaintiff is typical of the Class because, like all members of the injunctive Class, she purchased Defendants' Products which were sold unfairly and deceptively to consumers throughout the United States.

98. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating their rights. In addition, Plaintiff and the Class are represented by counsel who are competent and experienced in both consumer protection and class action litigation.

99. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed the FasciaBlaster by making the same misleading and deceptive claims to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class because Defendants would be prevented from continuing their misleading and deceptive practices. Plaintiff does not know whether the representations made by Defendants in the future will be accurate.

**<u>FIRST COUNT</u>**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT – EXPRESS WARRANTY, 15 U.S.C. § 2301, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

100. Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

101. Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

102. The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

103. The FasciaBlaster is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

104. Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

105. Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

106. Defendants represented that use of the FasciaBlaster could confer many health benefits, including "pain reduction," "improved flexibility, joint function, circulation, muscle definition and performance, nerve activity, posture, and enhanced beauty" and also the "virtual elimination of cellulite."

107. These statements were made in connection with the sale of the FasciaBlaster and relate to the nature of the product and affirm and promise that the product is as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

108. As alleged herein, Defendants breached the written warranty because the statements are false.

109. The FasciaBlaster does not conform to Defendants' written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

110. Defendants actually knew of their breach, but also had notice of it from Plaintiff's request to Defendants for a refund. Defendants had reasonable opportunity to comply, but instead did not refund Plaintiff's purchase—much less cure their breaches of the warranty.

111. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## SECOND COUNT
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT-IMPLIED WARRANTY, 15 U.S.C. § 2301, *et seq.*
### (On Behalf of Plaintiff and the Class)

112. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

113. Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

114. The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

115. An implied warranty of merchantability arose in connection with the purchases of the Product by operation of state law under the Magnuson-Moss Warranty Act, 5 U.S.C. § 2301(7).

116. Defendants breached the implied warranty of merchantability because the FasciaBlaster is not fit for its intended use and does not conform to the representations made by Defendants.

117. Defendants actually knew of their breach, but also had notice of it from Plaintiff's request to Defendants for a refund. Defendants had reasonable opportunity to comply, but instead did not refund Plaintiff's purchase—much less cure their

breaches of the warranty.

118.   Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial, along with attorneys' fees and costs.

### THIRD COUNT
### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT,
### 815 ILCS 505/1 *et seq.*
### (On Behalf of Plaintiff and the Class)

119.   Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

120.   The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.

121.   Defendants are "persons" pursuant to 815 ILCS 505/1(c).

122.   Plaintiff is a "consumer" pursuant to 815 ILCS 505/1(e).

123.   Defendants' conduct described herein constitutes "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact," made "with intent that others rely upon the concealment, suppression, or omission of such material fact or the use or employment of any [such] practice." *See* 815 ILCS 505/2.  Therefore, Defendants' conduct constitutes "unfair or deceptive acts" in the course of trade or commerce.  *See id.*

124.   Defendants intended that Plaintiff and each member of the Class would rely upon its deceptive conduct, and Plaintiff and the Class relied on Defendants' deceptive conduct in believing the Products would confer the health benefits promised by Defendants.

125.   Plaintiff and members of the Class would not have purchased Defendants' FasciaBlasters, or would have paid less for them, had they known that

26

Defendants engaged in the widespread deception described herein.

126. Plaintiff and members of the Class have been directly and proximately damaged by Defendants' actions in that they paid more for products than they would have had they known the truth about Defendants' misrepresentations.

127. In addition, Defendants' conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

128. Based on the foregoing, Plaintiff and the Class have been injured in an amount to be determined at trial.

## FOURTH COUNT
## BREACH OF EXPRESS WARRANTY UNDER ILLINOIS LAW
### (On behalf of Plaintiff and the Class)

129. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

130. Defendants were at all relevant times "merchants" within the meaning of 810 ILCS 5/2-314(1).

131. The FasciaBlasters, at all relevant times, were "goods" within the meaning of 810 ILCS 5/2-314(1).

132. Plaintiff and other Class members formed a contract with Defendants at the time they purchased the FasciaBlasters from Defendants.

133. Defendants warranted that the use of the FasciaBlaster would confer certain health benefits, as described above.

134. Defendants' warranty provided part of the basis of the bargain.

135. All conditions precedent have been performed or occurred.

136. Defendants has actual knowledge that it breached its warranty with Plaintiff and the Class because the FasciaBlasters do not confer the promised health benefits.

137. To the extent that any notice was provided to Defendants of their breach, such notice was provided by, *inter alia*, Plaintiff's request to Defendants for a refund

(which request was rejected by Defendants).

138.    As the foreseeable and actual result of Defendants' breach of express warranty, Plaintiff and the other Class members were deprived of the benefit of the bargain.

139.    As a result, Plaintiff and the members of the Class are entitled to damages in an amount to be determined at trial.

**FIFTH COUNT**
**BREACH OF IMPLIED WARRANTY UNDER ILLINOIS LAW**
**(On behalf of Plaintiff and the Class)**

140.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

141.    Defendants were at all relevant times "merchants" within the meaning of 810 ILCS 5/2-314(1).

142.    The FasciaBlasters, at all relevant times, were "goods" within the meaning of 810 ILCS 5/2-314(1).

143.    A warranty that the FasciaBlasters were merchantable and fit for the ordinary purpose for which they are used is implied by Illinois law.

144.    The purpose for which FasciaBlasters are used is to confer certain health benefits promised by Defendants.

145.    The FasciaBlasters, when sold, were not merchantable and not fit for the ordinary purpose for which they are used. The FasciaBlasters are inherently defective because they do not confer the promised health benefits.

146.    To the extent that any notice was provided to Defendants of their breach, such notice was provided by, *inter alia*, Plaintiff's request to Defendants for a refund (which request was rejected by Defendants).

147.    As a direct and proximate result of Defendants' breach of the implied warranty, Plaintiff and the other members of the Class have been damaged in an amount to be proven at trial.

## SIXTH COUNT
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE UNDER ILLINOIS LAW
### (On Behalf of Plaintiff and All Class Members)

148.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

149.   Defendants were at all relevant times "merchants" within the meaning of 810 ILCS 5/2-314(1).

150.   The FasciaBlasters, at all relevant times, were "goods" within the meaning of 810 ILCS 5/2-314(1).

151.   Defendants knew or had reason to know that Plaintiff and other Class Members were buying the FasciaBlaster with the specific purpose of buying a product that could confer the promised health benefits.

152.   Plaintiff and the other Class Members relied on Defendants' statements in selecting FasciaBlaster to fit their specific intended use, which was to achieve the promised health benefits.

153.   Defendants held themselves out as having particular knowledge of the FasciaBlaster and its health benefits.  Plaintiff's and the Class members' reliance on Defendants in selecting Defendants' Product to fit their particular purpose was reasonable given Defendants' claims and representations in their advertising and statements concerning the health benefits conferred by the use of the FasciaBlaster.

154.   Plaintiff and the other Class Members' reliance on Defendants in selecting the FasciaBlaster to fit their particular use was reasonable given Defendants' particular knowledge of the FasciaBlaster.

155.   As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the FasciaBlasters, together with interest thereon from the date of purchase.

## SEVENTH COUNT
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and Class Members)

156. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

157. Defendants have benefited by knowingly selling a worthless product.

158. Defendants have received and retained the benefits of the sales.

159. It is unjust, unconscionable, and inequitable for Defendants to retain these benefits.

160. As a result of Defendants' misconduct, Defendants should be required to disgorge the amount of their unjust enrichment in an amount to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages, including treble damages;

(c) Awarding injunctive relief preventing Defendants from continuing to sell the FasciaBlaster and make false and unsupportable statements in advertising the FasciaBlaster;

(d) Awarding punitive damages;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

30

Dated:  February 20, 2020.

**EDWARDS LAW GROUP**
The Haehnel Building
1101 East 11th Street
Austin, Texas 78702
      Tel.   (512) 623-7727
      Fax.   (512) 623-7729

By: /s/ *Jeff Edwards*
Jeff Edwards
Tex. Bar No. 24014406
Scott Medlock
Tex. Bar No. 24044783
Michael Singley
Tex. Bar No. 00794642
Federal ID No. 28138
David James
Tex. Bar No. 24092572
Federal ID No. 2496580

**THE SULTZER LAW GROUP P.C.**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
      Tel.   (845) 483-7100
      Fax.   (888) 749-7747

Jason P. Sultzer
N.Y. Bar No. 2917508
*Attorney-in-charge subject to court approval*
Adam Gonnelli
N.Y. Bar No. 2901361
Michael Liskow
N.Y. Bar No. 4783288

**SHOOP, P.L.C.**
9701 Wilshire Blvd., Suite 950
Beverly Hills, CA 90212
      Tel.   (310) 620-9533
      Fax.   (310) 620-6330

David R. Shoop
Cal. Bar No. 220576
Thomas S. Alch
Cal. Bar No. 136860

*Counsel for Plaintiff*